Call our third case of this morning, Monroe v. Superintendent Coal Township SCI, et al., Mr. Feebach and Ms. Tesoro. May it please the court, good afternoon, your honor. My name is Robert Feebach. Together with Mr. Kelly, who's with me at council table, we are a court-appointed council to represent Mr. Monroe. We represented him in the district court and we represent him here on this appeal from the dismissal of his prisoner's rights case in connection with his claim that he was denied right of access to the courts. The court below dismissed the second amended complaint with prejudice on that count. The court did, as was pointed out in the commonwealth's brief, permit us to amend with regard to the retaliation claim. We chose not to do so and so the case is properly here before the court with regard to the right of access claim. Now, your honors, in the dismissal by Judge O'Neill in the first amended complaint, Judge O'Neill was very specific in his opinion as to what the problems were with the allegations as to access to the court. What the court stated in that first opinion is, quote, to the extent that he is able to allege specific facts to support his claim that he suffered an actual injury. And then the court went on to say any amendment should specifically identify how the information contained in Gaines' letter would allow him to mount a non-frivolous challenge to his sentence. Now, in that opinion, your honors, there was no mention of any deficiency with respect to the allegations containing the importance of Gaines' testimony. What the court was concerned with in its first opinion was to allege how that information could have been used or would have been used. What is the pleading standard that you suggest that we should apply? Your honors, we allege or we argue here that the pleading standard should be the Christopher standard, but we also argue, and I'm addressing this argument, that assuming that the Twomby-Iqbal standard applies, that we have met that standard. I mean, I thought Christopher said that Rule 8 applies to both primary and underlying components of an access to court claim.  Yes, your honor. I guess we made the same point in the prior Monroe case from 2008. Yes, your honor. And the point here is that we complied with Judge O'Neill's first opinion. In fact, he says in his opinion, while I agree that Planoff has alleged that the allegedly destroyed letters might have had an impact on the outcome of his trial, I find that he still fails to set forth his underlining PCRA claim with specificity. May I also say, your honor, I meant to reserve two minutes for rebuttal. So Judge O'Neill seems to say in his second opinion that we met his objections in his dismissal of the first case. Now, it's important, your honor, that there was no oral argument on the Second Amendment complaint. There was no oral argument at all, ever in this case. This issue of the importance of Gaines's testimony was not raised in the Commonwealth's brief, and the Commonwealth's brief is in the appendix before the court. So this was an issue that was raised by Judge O'Neill sui sponte. Had he raised it and given us an opportunity to amend again, we would have amended and alleged the allegations with regard to Miss Gaines's, the importance of Miss Gaines's testimony as we have laid it out in this court, which is basically there was a lot of circumstantial evidence, but there were two eyewitnesses placing Mr. Monroe at the scene of the crime and hearing gunshots. And Miss Gaines was one of those two. She was a very important witness in the case. And if that was the problem that Judge O'Neill had, he had two options. One was to grant us yet another ability to amend the complaint in order to put forth, in a specific way, the importance of Miss Gaines's testimony. The second is he could have and should have taken judicial notice because that's a public record. He could have looked at the transcript, looked at the superior court opinion, and made a determination, the same determination that this court can make based on the record. Miss Gaines's testimony was very, very critical to the result, the conviction in this case. In fact, when she wasn't available to testify in the second case, they used her testimony from the first trial because it was so important to them. So, Your Honor, we first respectfully submit that using any standard, the problem here is that what we were faced with was a moving target. The judge granted the Commonwealth's motion to dismiss on the basis that we had not set forth how this testimony would have helped him get a PCRA hearing. You did have a chance to, you amended, right? We amended, but we amended to meet that problem that the judge identified in his first opinion. The judge didn't say anything at all in his second, in his opinion, as to a problem with whether or not Gaines's testimony would have been important. We did allege, we did allege in paragraph 49 of the second amended complaint, if it had been available at the time of trial, the explanatory evidence would have been sufficient to have changed the outcome of his trial. Now, I think that's sufficient. I don't think you need to plead the entire record in the case. Is it nonetheless conclusory? I realize that any pleading, you'd be handicapped. I mean, it's a hard thing to plead because of the circumstances. Your Honor, if it's deemed to be conclusory, then what should have happened is Judge O'Neill should have given us another opportunity to amend because we had no inkling that he was troubled at all by the issue of whether Gaines's testimony was important or not. And as to his statement that both the court and the Commonwealth are left to speculate as to the importance, is of course not so because the Commonwealth well knew the importance of Gaines's testimony. So, Your Honor, initially, we have a problem in that we are being a moving target here. It seems to me that if the court is going to dismiss on that ground, they should first give us the opportunity to meet the pleading standard, whatever that pleading standard is, by giving us the opportunity and saying to us, I'm troubled by that. I'm troubled that you haven't met that pleading standard with regard to the importance of Ms. Gaines's testimony. Instead, what the court did was tell us that we hadn't explained to the court in our pleading how the- But what he does, to some extent, he claims that if the prison officials had not destroyed or whatever they had done to these two letters, those letters would have led him to new exculpatory evidence. That may be right, but it seems speculative. Well, Your Honor, we get to the second point, which is Judge O'Neill's ground that the amended point- Well, if you look at Christopher to begin with, Your Honor, Christopher identifies the different types of cases, and in the analysis of Christopher v. Harbury, this is a backward-looking claim, where we allege that the wrongful action caused, quote, caused the loss of a meritorious cause of action. So, at this point, Your Honor, whether you're using whatever standard you're using, the only thing, the constitutional right that is lost here is the chance, as this court said in Monroe v. Beard, the chance to pursue a non-frivolous or arguable underlying PCRA claim. Now, I think that Judge O'Neill, in his second opinion, conceded that we had met that standard, but if you look at it, and his problem was with the importance of Gaines's testimony. Remember that Twombly also makes the point that even if the facts are doubtful, that is, you don't think that he ever got the letter or whatever, you've got to accept that as true. Here, the allegations of wrongful conduct, I would submit, meet the Twombly standard. We have to accept this fact that Gaines wrote the letter recanting her testimony. With that letter, it is plausible, using the ICBD and Twombly standard, plausible that Monroe would have obtained counsel to investigate the matter, which is what we plead. It's plausible that counsel would have spoken to Gaines, and that since Gaines voluntarily, and apparently out of guilt for having lied, wrote the letter, she would have adhered to that and provided an affidavit. Exactly what did Gaines testify about during the trial? She testified that she was in the car with the victim and others, including Mr. Monroe, and that they got out, she and the other occupant got out to burn a purse, and while they were out of the car, they heard a gunshot, and that was the alleged scene of the crime. So it's her testimony and one other person's testimony that Mr. Monroe was present at the time of the murder. Who was the other witness? The other witness was Peggy Franks. I'm sorry, Your Honor. The other witness was Peggy Franks. She was also allegedly in the car and burning the purse with Gaines. Your Honor, I think that the Commonwealth's argument proves too much, even under Twombly and Iqbad. The Commonwealth seems to argue a standard that we have to show that the conviction would have been overturned. The constitutional right is the access to the court. I think that even Judge O'Neill seems to concede that we have enough here to meet the PCRA standard, but he had a problem with the importance of Gaines's testimony. The constitutional right is the loss of access to the courts. It's not the actual injury. It's the inability to get the PCRA hearing. It's not the inability to win the case because that would, of course, put a much too high a standard. It's not the standard that this court articulated in Monroe v. Beard. In this case, in this court. The first Monroe case was also an access to the court's claim. Yes, and in that case the court said the constitutional right that's lost is the chance to pursue the hearing. In that case, there was no testimony as to how the lost evidence would have ever gotten them to a PCRA hearing. That was the issue that Judge O'Neill asked us to amend for, to try to show we did amend for that purpose, and then he hit us with a second problem that we were blindsided by and had no opportunity to amend. All right. Thank you very much. Ms. Tesoro. May it please the Court. I'm Claudia Tesoro. I represent the six individual appellees who were served in this case, and I point that out to emphasize that the Commonwealth is not the appellee. There are six separate people. The dismissal of the second amended complaint should be affirmed. There is a theme that we've noticed in the record that the appellant has stressed he should be allowed to, or should have been allowed to go forward here because an access to court claim is always speculative to some extent. It took the words out of my mouth. So if it's always speculative to some extent, how should we go about, what guidelines should we have for how to assess whether one can have an access to the court's claim under circumstances similar to this? Well, I think Monroe 1, I'll call it, helps us in that regard. The court there was dealing with two complaints similar to the situation here, and they said in their initial pleadings, the plaintiff's claim rested solely on the grounds that the defendants confiscated their legal materials. That claim on its face was insufficient to state a claim. Okay. So there was an amendment. So, too, were their subsequent amendments, which alleged, as was true here, that they lost the opportunity to pursue attacks on their convictions and civil rights claims, but did not specify facts demonstrating that the claims were non-frivolous. I think that is a very handy summary of what is required. When you are in a position like Mr. Monroe, he's got this communication with a witness who says she's willing to recant. Reportedly, she comes on her own to make that statement, and then before anything can really happen, she dies. So he's between a rock and a hard place, and then the evidence that he supposedly or claims that he had put away to preserve his claim, let's assume for the moment that's destroyed by someone. What kind of action does he have? Unfortunately, I think that if he has a claim on this set of facts, then there's no access to court claim that won't. Let's assume for the moment, and I realize there's no concession whatsoever, that there was evidence that he had that was destroyed, and that evidence is about the only thing you could put in that would substitute for the testimony of a witness who's now deceased. Forget about this case. What about the next case? What standard should we adopt? I think what we need here is to recognize that you have to have facts, and without talking about this case right now, I want to explain that even viewing this case the way Mr. Monroe would like to and the way I think your question assumes, you have to look at the situation presented. The situation in this case is a person who is serving a sentence for homicide who received a letter from a witness who said that when she testified something like 10 years earlier, she was under pressure and she lied. And this plaintiff wants to use that to develop another PCRA petition. Even looking at it with Ms. Vane's recantation in mind, I think the court has to take into account the situation of the plaintiff. It's fair to say legally that it's never easy to get PCRA relief, quite frankly, and the burden is even greater when the person seeking PCRA relief is making a second or subsequent request. Even if Ms. Gaines's letter had never been taken from him, even if Ms. Gaines hadn't died, the burden on Mr. Monroe would have been very, very heavy because courts, I'm quoting now the Pennsylvania Supreme Court, courts will not entertain a second or subsequent request for PCRA relief unless the petitioner makes a strong prima facie showing that a miscarriage of justice may have occurred. Here, an after-discovered evidence argument is always a tough one, and it is all the more so in the Pennsylvania courts just as it is in the federal courts if the new evidence that somebody wants to rely on is based on recantation because the courts are very loathe to give credence to that. What more facts could Mr. Monroe have alleged in order to bring this case within an arguable PCRA claim? I don't know if he could have ever said enough to make the facts of his particular case genuinely appear to be arguable and plausible because of what we know about that criminal case. I think Mr. Feeback What about what Mr. Feeback said? Was that, would that be sufficient or would that not be sufficient if he had another opportunity to amend? Well And why wouldn't it be sufficient? I think, first of all, that there were already two amendments in this case. I understand that. But even if another opportunity had been offered and he had brought forth the material and arguments that he's brought to this court and should have brought forth originally, the reality is, and Mr. Monroe's own account of things in the briefs and today, recognizes that Denise Gaines and Peggy Franks testified, both testified consistently. They were both together and they both told basically the same story. So if Denise Gaines, after the fact, had been around still to testify that she wasn't telling the truth, there'd still be Peggy Franks' evidence in the record that linked Mr. Monroe to the events the same way that Ms. Gaines' record or Ms. Gaines' testimony did. As a practical matter, under these circumstances, I don't think Mr. Monroe could really ever state a viable access to courts claim based on his desire to file another PCRA petition. Are we supposed to weigh the merits of the underlying claim? You are supposed to Considering whether there's an access to courts claim. Well, not, you don't decide the merits, of course, but the complaint under Christopher should state the underlying claim just as if it were being independently pursued. So the underlying claim that was lost allegedly would be the PCRA claim and the complaint needs to state, describe well enough to apply the non-frivolous test and show that the arguable nature of the underlying claim is more than mere hope. In this case, if the details had been set forth already, or even if there were another chance to amend, you can't get past that because of the very heavy burdens that a convicted individual faces trying to get post-conviction relief, especially a second post-conviction relief, especially a second request for post-conviction relief based on recanted testimony, especially where the recanting witness was echoed by another witness. So you don't have to look at the entire merits, but you have to look at it in context. Otherwise, there's no way to make the assessment that the underlying claim is more than mere hope. That is what Judge O'Neill hung his hat on, basically, and that is why this case was properly dismissed. I don't think that the district judge in granting a second motion to dismiss has to say, but if you didn't understand me the first time and the second time, here's one more time, and let's see if you can get it right. It's up to the plaintiff to do it. If Mr. Monroe were representing himself still, maybe, maybe, I'm not conceding it, but maybe there would be more reason to think that the court should, quote, unquote, bend over backwards for him. But he had very skillful counsel here. Thank you very much. Thank you. On the issue of the individual defendants, I just want to make clear because they raised this in their briefing. Counsel mentioned it again. There are four of the six that are involved in the, personally involved in the allegations with regard to the right of access. Those are the defendants, Karen Zahn, who told McGregory to go to Mr. Monroe's cell. There's McGregory. There's Bright, who went into the Dickinson and Stovis cells to destroy the copies of the letter, and Dolman, who ordered Bright to go in. With respect to the points that were made by counsel, she said, if you didn't, what is the test supposed to be, that if you didn't understand me the first time? Is that what we're saying was the problem with the repleting? We did understand him. That's the problem. The problem was we understood him to say that the defect in the complaint, as far as he was concerned, was that we hadn't spelled out how we would have been able to use this testimony in order to get a PCRA hearing. He did not say that there was also a problem, and the Commonwealth did not say in their brief that there was a problem because we had not set forth the importance of Gaines's testimony. We did allege that Gaines's testimony would have been sufficient to change the outcome of the trial. One of the problems that you have is that oftentimes you do have people coming in, in this case a lot of years later, and suggesting that that person who was a witness at a prior trial is recanting, and if the person, most of the time they stay alive, and they do testify, and usually it doesn't change anything. What makes you think, in this case, without Ms. Gaines there, that there would be anywhere near enough evidence that could even get you to the point where a judge is likely to disregard the testimony of the other witness and go back and require that there be a new trial? With all due respect, Your Honor, I think that goes beyond Monroe v. Beard, and basically you're asking to say are we able to show that we would have won the case, and the access to the courts here is the lack of ability to go forward, get a lawyer appointed, move forward to get a PCRA hearing, because now you just have his word. That's why I asked the question of your co-counsel or opposing counsel. To what extent in a case like this do you get into the merits, not that you decide the merits, but that you weigh the merits in deciding whether there is a valid, plausible claim that meets the Iqbal test? Well, Your Honor, I think you do have to look at that, but I think when you have two eyewitnesses and one of them is now going to recant and say that she was now forced by the police to make this statement which was not true, it casts credibility questions on the second eyewitness as well. Now, credibility alone is not sufficient to get a PCRA hearing, but you have the combination here of the recantation of one testimony of one of the eyewitnesses and you then cast some credibility doubts on the second one. Now, you could go beyond that and have a lot of hopes that maybe an investigation by a lawyer would show a lot of other things. I think we can't allege those things because that would go into hope and would go into the problems of Monroe v. Beard. But we can certainly say with accuracy here what is the likely thing that would have happened. What likely is with that letter, counsel gets appointed. Counsel goes to Ms. Gaines. Ms. Gaines says, yes, that's my letter. I intend to recant it. I was forced by the police. They extorted me. They threatened me if I didn't say this. They get her testimony in an affidavit, and I believe that that would be sufficient to get a PCRA hearing scheduled, and that's the constitutional right that was deprived. Thank you very much. Thank you. Thank you, Mr. Counsel. We'll take the matter under advisement and call our last witness.